IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHAJAR ABID, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-981-MEJ |
| | ) | |
| GOOGLE  LLC., | ) | |
| | ) | |
| Defendant. | ) | |

BRIEF IN SUPPORT OF PLAINTIFFS COMPLAINT

Introduction

Shajar Abid, is a chemistry professor's son, was a honors student, Dean's List in the Faculty of
Science (2006-7), University of Western Ontario as well as recipient of the Queen Elizabeth II
Scholarship. He created 20 apps in the last 7 years including for clients like IBM, where he was a
senior software engineer until fall of 2016. Then he decided to ask, How many people get cured
from chemo? Astonished he could not find even ONE, he set out to solve the problem. Using his
research expertise and scientific prowess, as well as spiritual wisdom he filed a patent, January
31 2017. He created a website mightyhoney.org in March of 2017 and started dealing with
Google for adwords then. They did run his ads from during the end of March 2017, the ads were
then suspended, on inquiry his account was banned. He created an android app May of 2017.
December 2017, the FDA coerced him to delete his website, remove his app from Amazon,
delete his MightyHoney facebook page and twitter handle (@mightyhoney).

FACTUAL &: PROCEDURAL BACKGROUND

Plaintiff tried to solve the problem of cancer, instead of being able to help people he discovered a

vast world of fraud, deception, lies, suppression, censorship, dishonesty, uncaring, greed, blood-

lust and no cares for the public's interest in the government or the defense's counsel.

**LAW AND ARGUMENT**

<u>CLAIM I: BREACH OF CONTRACT and BREACH OF COVENANT OF GOOD FAITH</u>

*( Title 1 enacted 1872. )*

**1427.** An obligation is a legal duty, by which a person is bound to do or not to do a certain thing Section Fourteen Hundred and Twenty-eight. An obligation arises either from:

One—The contract of the parties; or, Two—The operation of law.

See, e.g., Kirke La Shelle Co. v. Paul Armstrong Co., 263 N.Y. 79, 87, 188 N.E. 163, 167 (1933) ("[In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing.");

It has been noted that one may bring a claim for breach of the implied covenant without also bringing a claim for breach of other contract terms. (See Careau & Co., supra, 222 Cal.App.4th at p. 1395.)

"The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made. The covenant thus cannot ' " 'be endowed with an existence independent of its contractual underpinnings.' " ' It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their

agreement." (Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317, 349–350 [100 Cal.Rptr.2d 352, 8 P.3d 1089], original italics, internal citations omitted.)

" '[B]reach of a specific provision of the contract is not . . . necessary' to a claim for breach of the implied covenant of good faith and fair dealing." (Thrifty Payless, Inc. v. The Americana at Brand, LLC (2013) 218 Cal.App.4th 1230, 1244 [160 Cal.Rptr.3d 718].)

"The issue of whether the implied covenant of good faith and fair dealing has been breached is ordinarily 'a question of fact unless only one inference [can] be drawn from the evidence.' " (Hicks v. E.T. Legg & Associates (2001) 89 Cal.App.4th 496, 509 [108 Cal.Rptr.2d 10], internal citation omitted.)

 "When one party to a contract retains the unilateral right to amend the agreement governing the parties' relationship, its exercise of that right is constrained by the covenant of good faith and fair dealing which precludes amendments that operate retroactively to impair accrued rights." (Cobb v. Ironwood Country Club (2015) 233 Cal.App.4th 960, 963 [183 Cal.Rptr.3d 282].

I contend that Google's conduct was in breach of the implied covenant of good faith, which was implied in our April 4th, 2017 deal for the 21 days of adwords servce. That on the basis of that

deal I had a right to receive the service, thus they are guilty of invidious conduct done with mal

fides, and to be reproached as such.

Claim II: Conspiracy to restrain trade

Pursuant to Section 1 of the Sherman Act, "every contract, combination in the form of trust or

otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with

foreign nations, is declared to be illegal".

Section 4 of the Clayton Act, provides that "any person who shall be injured in his business or

property by reason of anything forbidden in the antitrust laws may sue" for treble damages,

prejudgment interest, and costs of suit, including attorney fees.

Chief Justice White's statement of the rule of reason, set forth in Standard Oil and American

Tobacco, contains three tests which may be rendered as (1) the per se concept; (2) the intention

of the parties; and (3) the effect of the agreement. (74 YALE L.J. 775, 804.)

A restraint of trade becomes "unreasonable" when its primary effect, if it has any effect, is

presumed to be a restriction of output.

"The basic purpose of the antitrust laws is to prevent undue restraints upon

trade which have a significant effect on competition. A contract, combination, or

conspiracy is an illegal restraint of trade if it constitutes a per se violation of

the statute or has as its purpose or effect an unreasonable restraint of trade. The determination of the existence of such an illegal restraint of trade turns upon findings of fact and involves 'weigh[ing] all of the circumstances of a case.' " (Corwin v. Los Angeles Newspaper Service Bur. (1978) 22 Cal.3d 302, 314–315 [148 Cal.Rptr. 918, 583 P.2d 777], internal citations omitted and footnotes.)

"Under the rule of reason, the court inquires into the nature and history of the restraint, as well as other relevant considerations." (Reynolds v. California Dental Service (1988) 200

'Whether a restraint of trade is reasonable is a question of fact to be determined at trial.' " (Kolling v. Dow Jones & Co. (1982) 137 Cal.App.3d 709, 727 [187 Cal.Rptr. 797], internal citations omitted.)

_Side bar: Argument Anti-competitive vs beneficial effect_

Rule of Reason—Anticompetitive Versus Beneficial Effects
In deciding whether Google's challenged restraint had an anticompetitive or beneficial purpose or effect on competition, you should consider the results the restraint was intended to achieve or actually did achieve. In balancing these purposes or effects, you also may consider, among other factors, the following:

(a)  The nature of the restraint;

    - internet censorship

(b) The probable effect of the restraint on the business involved;

    - my operation was e-commerce, on the internet

(c) The history of the restraint;

    - legitscript was made to bring some order to early days of internet pharmacies

(d) The reasonableness of the stated purpose for the restraint;

Ostensibly, legitscript helps pharmacies be credible, but my product is not a

pharmaceutical! This is why it was unreasonable for Google to ban me.

(e) The availability of less restrictive means to accomplish the stated

purpose;

I have no problem with Google LegitScript and FDA monitoring pharmacies, but they

should not interfere with my pure and wholesome confectionery.

(f) The portion of the market affected by the restraint;

Medicine market

(g) The extent of Google's market power; [and]

Google has more than a dominant share in search in the USA

(h) Is it ok to censor divine cure claim? Should the people be stuck with poisonous chemo and

dangerous radiation? Both are very costly, Arabic herbal tradition offers a safer more economical

remedy.

I argue that because of the illegal conspiracy to restrain trade, it is unreasonable because its restricted the output of my product of my honey infusion, with no ads, I have no way to find cancer patients to help.

To establish a section 1 violation, a plaintiff must prove (1) some level of joint activity among defendants sufficient at least to infer an "agreement" and (2) that the defendants' conduct restrained trade. The statute does not identify the scope of the term "trade" or enumerate any practices considered to be "restraints"; instead, Congress intentionally left it up to the courts "to give shape to the statutes broad mandate.'"

See, e.g., State Oil Co. v. Khan, 522 Ll.S,3, 10 (1997) ("Some types of restraints, however, have such predictable and anticompetitive benefit that they are deemed unlawful per se.")

Per se rules are invoked when surrounding circumstances make the likelihood of anticompetitive conduct so great as to render unjustified further examination of the challenged conduct."); N. Pac. Ry. Co. v. United States, 356 U.S. 1,5 (1958) ("[T]here are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use.")

By blocking my ability to gain virtue, by serving cancer patients my honey infusion, Google lacks any redeeming virtue. Due to their illegal and discriminatory behavior there has been a

pernicious effect on competition for products and services for cancer patients which is conclusively unreasonable.


Hence I plead to the Judge,

if the existence of the restraint was established, there was no further defence argument permitted.


Claim III – conspiracy to monopolize


Sherman Act, Section 2—Anti-Monopolization Pursuant to Section 2 of the Sherman Act, any person "who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade of commerce among the several States, or with foreign nations," is guilty of a crime


Predominant market shares can be compelling evidence that monopoly power has been achieved. See, e.g., United States v. Grinnell Corp., 384 U.S. 563, 571 (1966); United States v. Aluminum Co. of America, 148 F.2d 416, 429 (2d Cir. 1945).


Google has conspired to monopolize with LegitScript and FDA the medicine. Moreover this conspiracy is restricting trade of medicines of which are not drugs, pharmaceutical or single purified molecules but a divine cure made of pure and wholesome food, which is low-risk, and GRAS (21CFR182.10) as well as permitted (21CFR172.510) as per United States law.

It was never the intention of the founders the federal government decide what is food or medicine, we are afforded the right of free speech.

The conspiracy has silenced my ad by the actions of Google, banning my adwords account April 4, 2017. As well censoring my website, app, twitter and facebook by coercive actions of the FDA, done suspiciously in Dec 2017, after I had already submitted a health claim petition in March of 2017, that was denied without systematic review, and submitted the *structure function claims* Aug 29, 2017.

This is tantamount to destroying my business, torching it, kidnapping me, and duck taping my mouth shut while taking my wallet and briefcase.

A coordinated decisional model that can be used by practitioners and the courts in analyzing conspiracy cases brought under Section 2 of the Sherman Act.

The components of the decisional model are as follows:

(1) The existence of a Section 2 conspiracy must first be demonstrated, whether by the express statements of the conspirators, the course of dealings between them, or other circumstantial evidence.

- contracts between Google LegitScript and LegitScript and the FDA.

(2) The relevant market within which the conspiracy operates must also be defined.

- ONLINE ADS FOR MEDICINES

(3) Once the existence of the conspiracy has been established, the market shares or other evidence of market power of the individual conspirators can be aggregated for purposes of determining whether the conspirators possess joint monopoly power.

Google (search monopoly), legitscript (monopoly, for e-pharmacy) and FDA (centralized authority, de facto monopoly, apt to corruption).

(4) If the conspirators have joint monopoly power, it must additionally be shown that they intended to engage in concerted action having the "necessary and direct result" of maintaining their combined monopoly position within the relevant

(5) It must be shown that the conspirators have engaged in overt acts demonstrating that the conspiracy has gone beyond the stage of mere idle speculation. These overt acts need not be in themselves predatory or exclusionary, and may even consist of the very same acts used to prove circumstantially the existence of the conspiracy and the conspirators' general intent. (6) Unless the conduct in which the conspirators intended to engage is conclusively unreasonable, the defendants should be afforded the opportunity of proving the competitive reasonableness of their conduct.

Indeed, there is little argument over the principle that existence of monopoly power—"the power to control prices or exclude competition," _E. I. du Pont de Nemours & Co., supra,_ 351 U.S. at 391, 76 S.Ct. at 1005—is "the primary requisite to a finding of monopolization." 1 M. Handler, _Twenty-five Years of Antitrust_ 691 (1973).

The Supreme Court has informed us that "monopoly power, whether lawfully or unlawfully acquired, may itself constitute an evil and stand condemned under § 2 even though it remains unexercised."

My product is halal, Google is a monopoly,

All Monopolies are inherently evil,

Google banned the advertisement for my halal product

Google is inherently evil.

Judge Hand explained, in addition, that Congress was not "actuated by economic motives alone" in enacting § 2. *Id.* Considerations of political and social policy form a major part of our aversion to monopolies, for concentration of power in the hands of a few obstructs opportunities for the rest.

Because, like all power, it is laden with the possibility of abuse; because it encourages sloth rather than the active quest for excellence; and because it tends to damage the very fabric of our economy and our society, monopoly power is "inherently evil." *United States v. United Shoe Machinery Corp.,* 110 F.Supp. 295, 345 (D.Mass. 1953), *aff'd per curiam,* 347 U.S. 521, 74 S.Ct. 699, 99 L.Ed. 910 (1954)

The Court held that monopoly power had been illegally used "to beget monopoly," 334 U.S. at 108, 68 S.Ct. 941. Its rationale swept more broadly, however, for it admonished that "the use of monopoly power, however lawfully acquired, to foreclose competition, to gain a competitive advantage, or to destroy a competitor, is unlawful." *Id.* at 107, 68 S.Ct. at 945.

I argue that Google abused its monopoly power, in order to destroy my lawful herbal medicine business, to the benefit of their, evilly begotten anti-trustful monopoly on online ads for pharmaceuticals.

We accept the proposition that it is improper, in the absence of a valid business policy, for a firm with monopoly power in one market to gain a competitive advantage in another by refusing to sell a rival the monopolized goods or services he needs to compete effectively in the second market. Indeed, Kodak itself was the defendant in the leading case establishing this point. *Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U.S. 359, 375, 47 S.Ct. 400, 71 L.Ed. 684 (1927); *accord, Poster Exchange, Inc. v. National Screen Service Corp.,* 431 F.2d 334, 339-40 (5th Cir.1970), *cert. denied,* 401 U.S. 912, 91 S.Ct. 880, 27 L.Ed.2d 811 (1971). Moreover, as indicated by our discussion of § 2 principles, such a use of power would be illegal regardless of whether the monopoly were legally or illegally acquired.

It is "plain from the treble-damage statute itself [15 U.S.C. § 15]" that "a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). Although the business of a monopolist's rival may be injured at the time the anticompetitive conduct occurs, a purchaser, by contrast, is not harmed until the monopolist actually exercises its illicit power to extract an excessive price. The case of predatory pricing illustrates the point clearly.

The congressional purpose that private actions serve "as a bulwark of antitrust

enforcement." *Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 139, 88

S.Ct. 1981, 1984, 20 L.Ed.2d 982 (1968). .

Google VI: Unfair and deceptive practices North Carolina

*N.C. GEN. STAT. § 75-1.1. Methods of competition, acts and practices regulated; legislative*
*policy*

> (a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts
>
> or practices in or affecting commerce, are declared unlawful.

 claim under this statute requires proof of three elements: (1) an unfair or deceptive act or

practice; (2) in or affecting commerce; (3) which proximately caused the injury to the claimant.

*N.C. GEN. STAT. § 75-16. Civil action by person injured; treble damages*

> If any person shall be injured or the business of any person, firm or corporation shall be
>
> broken up, destroyed or injured by reason of any act or thing done by any other person,
>
> firm or corporation in violation of the provisions of this Chapter, such person, firm or
>
> corporation so injured shall have a right of action on account of such injury done, and if
>
> damages are assessed in such case judgment shall be rendered in favor of the plaintiff and
>
> against the defendant for treble the amount fixed by the verdict.

**Intentionally and Knowingly Making False Statements:** *Torrance v. AS&L Motors, Ltd.*, 119 N.C. App. 552, 459 S.E.2d 67 (1995).

**Lying as an Aggravating Circumstance:** *Garlock v. Henson*, 112 N.C. App. 243, 435 S.E.2d 114 (1993).

Google lied to me on April 4th, 2017 about running my ad for 21 days for $10 a day.

They intentionally and knowingly made false statements.

The consequence of this deception and duplicitous behavior my new venture to help cancer patients, mightyhoney.org has been destroyed.

Claim V: Fraud

California, "fraud" and "deceit" are defined in California Civil Code sections 1572, 1709, and 1710. Civil Code section 1709 defines "deceit" generally as, "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Civil Code section 1710 specifies four kinds of deceit:

"A deceit, within the meaning of [section 1709], is either:

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true [intentional misrepresentation of fact];

2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true [negligent misrepresentation of fact];

3. The suppression of a fact, by one who is bound to disclose it, or who gives information of

other facts which are likely to mislead for want of communication of that fact

[concealment or suppression of fact];

CIVIL CODE – CIV 1572.

Actual fraud, within the meaning of this Chapter, consists in any of the following acts,

committed by a party to the contract, or with his connivance, with intent to deceive another party

thereto, or to induce him to enter into the contract:

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2. The positive assertion, in a manner not warranted by the information of the person making it,

of that which is not true, though he believes it to be true;

3. The suppression of that which is true, by one having knowledge or belief of the fact;

4. A promise made without any intention of performing it; or,

5. Any other act fitted to deceive.

Shajar Abid claims that Google made a false

representation that harmed him .

To establish this claim, Shajar Abid must prove all of the following:

1. That Google represented to Shajar Abid that a

fact was true;

2. That Google's representation was false;

3. That Google knew that the representation was false

When it was made , or  made the representation

recklessly and without regard for its truth;

4. That Google intended that Shajar Abid rely on

the representation;

5. That Shajar Abid reasonably relied Google's

representation;

6. That  Shajar Abid was harmed; and

7. That Shajar Abid's reliance on Google's

representation was a substantial factor in causing his harm.


Actionable Deceit. Civil Code section 1709


"The elements of fraud that will give rise to a tort action for deceit are: " '(a)

misrepresentation (false representation, concealment, or nondisclosure); (b)

knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce

reliance; (d) justifiable reliance; and (e) resulting damage.' " (Engalla v.

Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 974 [64 Cal.Rptr.2d

843, 938 P.2d 903], internal quotation marks omitted.)


Google is a liar, they have concealed my ad, when they had a duty to disclose it.

And they made misrepresentations with elements of scienter when displaying Adwords data from December 2017, showing that I had received 4 phone calls Dec 4, 2017.

So either they were running my ads in December in violation of their own policy, or they duplicity billed me for running the ads while my site was still suspended, and then brazenly showed me what can be characterizes only as fraudulent data, that is a deceit.

And then they took $350 dollars from account, while the dashboard showed they somehow rang it up to $250.

California Code of Civil section 3333, which provides:

For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.

This is a much broader measure of damages than is typically applied in the context of a simple breach of contract, because it is not limited to foreseeable damages.  Rather, with proof of causation, however unanticipated it may have been, any resulting harm can be compensated.

Equally important, is the potential for punitive damages pursuant to California Civil Code Section 3294, which provides, in part:

Exemplary damages; when allowable, definitions

(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

(2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

I argue that Adwords manager decision to ban my ad was based on malice, and I plead that Google has made me go through oppression for a whole year, and they committed multiple instances of fraud, intentional misrepresentation, deceit and concealment.

The allegation that they have concealed my divine cure for cancer, is worthy as an independent claim and the cause for my moral outrage.

CLAIM VI: Vertical Conspiracy to restrain trade

"Two forms of conspiracy may be used to establish a violation of the antitrust

laws: a horizontal restraint, consisting of a collaboration among competitors; or

a vertical restraint, based upon an agreement between business entities

occupying different levels of the marketing chain." (G.H.I.I. v. Mts, Inc. (1983)

147 Cal.App.3d 256, 267 [195 Cal.Rptr. 211], internal citations omitted.)


Vertical non-price restraints are tested under the rule of reason; that is, the plaintiff must prove

that the restraint had an anticompetitive effect in the relevant market in order to prevail.' "

(Exxon Corp. v. Superior Court (1997) 51 Cal.App.4th 1672,

1680–1681 [60 Cal.Rptr.2d 195], internal citations and footnote omitted.)


"The alleged antitrust violation need not be the sole or controlling cause of the

injury in order to establish proximate cause, but only need be a substantial

factor in bringing about the injury." (Saxer v. Philip Morris, Inc. (1975) 54

Cal.App.3d 7, 23 [126 Cal.Rptr. 327], internal citation omitted.


Medical Oncologists don't want a cure for cancer due to economic interests.


All behavior can be explained by economics, thus the systemic capture by the big pharmaceutical

companies, along with the information control system is wholly unconstitutionally, there is

neither a free market nor a free press. With Senators approving such archaic and abstruse,

regulation, you wonder if they knew it was unconstitutional or if the lobbyists wrote the laws that way.

Or if the industry had purposely contrived such a system to prevent the lawful competition by means of illegal barriers to commerce.

True the Judge says Google had no obligation to host my ad on its platform.

But isn't it unjust and unfair for them to do so?

the challenged conduct is unfair under the following test (20 Cal. 4th at 186): "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice under Section 17200, the word 'unfair' in that Section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of law, or otherwise significantly threatens or harms competition."

**CONCLUSION**

Google, and actually Alphabet Inc (they created the LLC during this case) violated the letter and spirit of the anti-trust laws, committed fraud and deception and breached the public trust by concealing my ad.

I have no obligation to cure anyone of cancer.
I have no obligation to pay to find cancer patients.
I have no obligation to pay for people's cancer treatment.
I have no obligation to educate the government.
But I did it anyways, because duty trumps obligation.

(philosopher Immanuel Kant said that an act of duty emanated from moral law. An obligation, on the other hand, arises out of a set of rules aimed at maintaining order.)


Respectfully submitted,


Shajar Abid
5317 Roshni Ter
Mcleansville, NC
27301
919-720-8819
nubiustechnologies@gmail.com
