UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAJAR ABID,<br><br>    Plaintiff,<br><br>  v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 18-cv-00981-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 71 |

## INTRODUCTION

Pending before the Court is Defendant Google LLC's Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff Shajar Abid filed a belated Opposition.[1] Dkt. No. 73. Google did not file a Reply. Pursuant to Rule 78(b) and Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** Google's Motion for the following reasons.

## BACKGROUND

**A.     First Amended Complaint**

For purposes of this Motion, the Court accepts Plaintiff's factual allegations – as best it can discern them – as true. *See Fields v. Twitter, Inc.*, 881 F.3d 739, 743 (9th Cir. 2018).

Plaintiff claims his product "MightyHoney is a divine cure for cancer" and does so "in

---

[1] When Plaintiff did not timely file an Opposition, the Court ordered Plaintiff to show cause why this case should not be dismissed for failure to prosecute. OSC, Dkt. No. 72. In response, Plaintiff filed "The Alchemist's Declaration in Opposition to Motion to Terminate or Dismiss." Dkt. No. 73. The Court construes this document to be Plaintiff's Opposition. Plaintiff did not otherwise respond to the OSC. *See* Docket.

good faith, honestly, [and] based on proprietary scientific research, done on a global scale." First Am. Compl. ("FAC") at 9, Dkt. No. 66. On April 4, 2017, Plaintiff and Google entered into a written agreement to run his "divine cure for cancer" Adwords campaign for 21 days at a cost of $210. *Id.* at 2-3. Google did not run the advertisement as promised. *Id.* at 3. Instead, Google banned his advertisement on the grounds that Plaintiff's product is "'unapproved by the government'" and "due to 'policy.'" *Id.* at 7, 9; *see id.* at 3-4. Google nevertheless billed him $350 on December 8, 2017. *Id.* at 7. When Plaintiff asked how Google arrived at this sum, he "was given no concrete answer." *Id.* It appears these charges were the result of four "supposed" phone calls. *See id.* Plaintiff "was never told how much each call costs." *Id.* Plaintiff's cell phone records for December 4, 2017 do not reflect such inbound calls, and Plaintiff does not recall receiving them. *Id.* "Thus the phone call data shown to [Plaintiff] on the Adwords site was fraudulent, a lie, bamboozle, a scheme[.]" *Id.*

Plaintiff alleges six claims: (1) breach of contract and non-performance; (2) illegal restraint of trade in violation of the Sherman Act; (3) monopolization in violation of the Sherman Act; (4) unfair and deceptive trade practice under North Carolina law; (5) fraud; and (6) conspiracy under California law. *Id.* at 2-11. He seeks the following relief: (1) "specific performance, with Stipulations"; (2) $300 billion in damages for anti-trust violations; (3) "pass legislation to prevent US citizen data from leaving the United States, Data Protection laws, Truth in Data laws"; (4) "order a criminal investigation using forensic accountants to expose how wide and far this particular fake phone call scam goes"; and (5) exemplary damages for "fraud, malice and oppression." FAC at 2, 11-12.

**B.    Procedural History**

The Court's Order re: Motion to Dismiss ("MTD Order") sets forth a detailed procedural history of the action. MTD Order, Dkt. No. 62. As is relevant here, the Court found Plaintiff's initial Complaint failed to state claims under 42 U.S.C. § 1983 and the Sherman Act. *Id.* at 5-7; *see* Compl., Dkt. No. 1; Mot. to Suppl. Pleadings, Dkt. No. 6. The Court also found the Complaint did not state claims for breach of contract and deceptive trade practices under North Carolina law. MTD Order at 7-9. The Court dismissed Plaintiff's § 1983 claim without leave to

1  amend, but granted him leave to amend his Sherman Act, breach of contract, and deceptive
2  practices claims. *Id.* at 9.

## LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the

1    movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

2    to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."

3    *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v.*

4    *Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

6    Plaintiff does not respond to the arguments Google makes in its Motion; instead, he merely

7    repeats the allegations of the FAC and provides a number of documents he identifies as scientific

8    studies. *See* Opp'n. This generally constitutes a waiver of the arguments. *See Giroux v. Essex*

9    *Prop. Tr., Inc.*, 2016 WL 5394088, at *1 (N.D. Cal. Sept. 27, 2016) (interpreting plaintiff's failure

10   to oppose motion to dismiss as concession that complaint should be dismissed) (collecting cases).

11   But given Plaintiff's pro se status, the Court nevertheless considers whether Plaintiff sufficiently

12   states a claim.

### A.   Breach of Contract

14   Under California law, "the elements of a cause of action for breach of contract are (1) the

15   existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3)

16   defendant's breach, and (4) the resulting damages to the plaintiff."[2] *Oasis W. Realty, LLC v.*

17   *Goldman*, 51 Cal. 4th 811, 821 (2011).

18   The Court previously found Plaintiff failed to allege facts showing Google breached their

19   agreement:

> Google Adword's policies prohibit "the promotion of . . . [n]on-government approved products that are marketed in a way that implies that they're safe or effective for use in preventing, curing, or treating a particular disease or ailment[.]" [Dkt. No. 46] at ECF pp.18-19 (Advertising Policies).
>
> Plaintiff does not assert facts indicating he has received government approval for MightyHoney. On the contrary, it appears Plaintiff has not yet done so. *See* Mot. to Suppl. Pleadings ¶ 11 ("I am ready to submit a petition to make the 'health claims' on my label[.]"). Google therefore had no obligation to host Plaintiff's advertisements

---

[2] The Court previously analyzed Plaintiff's breach of contract claim under North Carolina law. MTD Order at 7-8 & 7 n.3. While the FAC does not specify the state law forming the basis of Plaintiff's breach of contract claim, it references California Civil Code section 3358. FAC at 3. The Court therefore assumes Plaintiff brings this claim under California law.

4

on its platform.

MTD Order at 7 (footnote omitted).

No allegations in the FAC cure this deficiency; rather, the FAC confirms Plaintiff had not received government approval for MightyHoney when he sought to advertise his product on Google's Adwords platform.  Plaintiff attaches to his FAC a letter dated December 7, 2017 from the U.S. Food and Drug Administration's Health Fraud Team to Plaintiff regarding MightyHoney.[3]  FAC, Ex. 7.  The letter states that "[v]arious claims and statements made on your website and/or in other labeling establish that [Mighty Honey] is a drug as defined in 21 U.S.C. § 321(g)(1)(B) because it is intended for the treatment, cure, mitigation, or prevention of disease." *Id.* at 1.  The letter further explains that

> [b]efore a new drug may be marketed or otherwise introduced into interstate commerce, it must be approved by FDA on the basis of scientific data demonstrating that the drug is safe and effective under the conditions of use in its labeling.  See 21 U.S.C. §§ 355(a) and 331(d).  Your drug product does not have an FDA-approved application as required by 21 U.S.C. § 355.

*Id.*

Because Plaintiff did not obtain FDA approval for the product, he did not comply with Google's Adwords policies and thus did not fulfill his obligations under the alleged contract.  The FAC does not otherwise contain allegations that Plaintiff's advertisement complied with Google's Adwords policies to allow the plausible inference that Plaintiff performed under the terms of the contract.  Nothing in his FAC or Opposition suggests Plaintiff possesses additional facts to support a breach of contract claim.  On the contrary, as the documents Plaintiff attaches to his FAC confirm Plaintiff's non-performance, a further opportunity to amend would therefore be futile.  For these reasons, the Court DISMISSES Plaintiff's breach of contract claim WITHOUT LEAVE TO AMEND.

---

[3] As Plaintiff attaches this document to his FAC, the Court may consider it in ruling on Google's Motion to Dismiss.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." (internal quotation marks omitted)).

United States District Court
Northern District of California

**B.     Sherman Act Claims**

Plaintiff brings his second and third claims under sections 1 and 2 of the Sherman Act, respectively.

1.     Section 1

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce[.]"  15 U.S.C. § 1.  "To state a claim under Section 1 of the Sherman Act, . . . claimants must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

Plaintiff alleges he "determine[d] Google does in fact restrain trade, illegally" because "the Google employee revealed that LegitScript would flag [his] site."[4]  FAC at 4.  He further alleges "[t]he contract between Google and LegitScript in its intent is to restrain[] trade, [and] that is per se illegal." *Id.*  He contends "[t]he attached documents and the fact that [his] site has been deleted, does more than allege a conspiracy or show intent." *Id.*; *see id.*, Ex. 2 (blog post titled "LegitScript helping implement Google Product Search policies for prescription drugs").

The Court previously dismissed Plaintiff's § 1 claim because the Complaint did not allege "facts showing Google sought to unreasonably restrain trade, let alone succeeded in doing so."  MTD Order at 6.  Plaintiff does not allege any new facts to support this claim.  The mere allegation that Google and LegitScript entered into an agreement does not, in and of itself, suggest the two entities conspired to restrain trade. *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015) ("Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a § 1 violation." (internal quotation marks omitted)).  The blog post Plaintiff

---

[4] The Court dismissed LegitScript as a defendant.  Dkt. No. 63.

6

1   attaches to the FAC states that

> [l]ast year, LegitScript . . . announced we would be helping Google implement its updated online advertising policy . . . regarding Internet pharmacies. We're pleased to announce that our role has been expanded to helping monitor Google Product Search . . . for shopping results related to prescription drugs and other regulated healthcare products.

FAC, Ex. 2 at 1. This post does not contain any facts showing how this agreement constitutes a conspiracy to unlawfully restrain trade. The Court therefore DISMISSES Plaintiff's Sherman Act § 1 claim. Despite Plaintiff's prior opportunity to amend, he again fails to allege sufficient facts in support of this claim. Nothing in the FAC or the Opposition suggests Plaintiff now possesses facts which he could not allege in his prior two Complaints. Accordingly, Plaintiff's Sherman Act § 1 claim is dismissed WITHOUT LEAVE TO AMEND.

    2.    <u>Section 2</u>

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony." 15 U.S.C. § 2. A monopolization claim requires a plaintiff to show "three essential elements . . . : (a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1131 (9th Cir. 2015) (internal quotation marks omitted). "[T]o state a claim for attempted monopolization, the plaintiff must allege facts that, if true, will prove: (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 506 (9th Cir. 2010) (internal quotation marks omitted).

It is unclear whether Plaintiff alleges Google monopolized or attempted to monopolize trade or commerce. It is also unclear precisely what trade or commerce is at issue. For instance, Plaintiff "claim[s] the oncology market is predatory," but he does not allege facts that explain how Google is involved in the oncology market. FAC at 5.

Plaintiff alleges "Google adwords maintains a monopoly in search (see EU case)." FAC at 5. The Court previously explained that "[a]ssuming, arguendo, the European Union had found Google violated European antitrust laws, Plaintiff does not show how that finding also means Google violated the Sherman Act based on the facts he alleges in his Complaint and Motion to Supplement Pleadings." MTD Order at 6-7. This remains the case: there are no allegations explaining how a finding that Google violated European antitrust laws relates to the instant action.

Plaintiff's allegation that "Google profited and maintained its monopoly on online advertising for e-pharmacies" is also unsupported by sufficient facts. *Id.* On the contrary, Plaintiff's assertion that "[a]fter Google banned [his] ad, [he] sought alternative sources such as Bing Ads and Facebook" suggests there are other advertising platforms available.

Accordingly, the Court DISMISSES Plaintiff's Sherman Act § 2 claim. Plaintiff asserts a claim under § 2 of the Sherman Act for the first time in his FAC; Plaintiff previously only alleged a §1 violation. *See* Mot. to Suppl. Pleadings ¶ 2. As Plaintiff has not had a prior opportunity to amend this claim and as it is not clear that Plaintiff cannot allege the requisite facts to support a § 2 claim, the dismissal shall be WITH LEAVE TO AMEND.

**C.    Unfair and Deceptive Trade Practices**

To state a claim under North Carolina's Unfair and Deceptive Trade Practice Act ("UDTPA"), N.C.G.S. § 75-1.1, "a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656 (2001). As is relevant here, "[a]cts are deceptive when they possess the tendency or capacity to mislead, or create the likelihood of deception." *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 164 (4th Cir. 2012), *as amended* (May 9, 2012) (applying North Carolina law) (internal quotation marks, emphasis, and brackets omitted).

In dismissing Plaintiff's UDTPA claim, the Court held

> "[A]ctions for unfair or deceptive trade practices are distinct from actions for breach of contract . . . [;] a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under" the UDTPA. *Hardin v. York Mem'l Park*, 730 S.E.2d

> 768, 777 (2012) (internal quotation marks omitted). [] Plaintiff's UDTPA claim cannot be predicated on the alleged breach of contract; Plaintiff does not explain why Google's refusal to host his MightyHoney ad where that ad was in violation of Google's policies constitutes "egregious or aggravating circumstances."

MTD Order at 8.

Plaintiff again predicates his UDPTA claim on Google's alleged breach of contract. FAC at 6 ("Google by making an oral contract with me on the phone . . . promised to run my ad for 21 days, then instantly after I agreed to the e-mail contract[] they banned me."). Because the Court finds the FAC does not state a breach of contract claim, this conduct cannot support a UDPTA claim. Moreover, as the Court previously explained, a well-pleaded breach of contract claim would be insufficient to support a claim under the UDPTA. *See also PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 224 (4th Cir. 2009) ("North Carolina courts have repeatedly held that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under the UDTPA." (internal quotation marks and edits omitted)).

Plaintiff's allegation that "the Google person Marcus . . . verbally assured me that my ad was going to run was lying, thus that is an aggravating circumstance" does not save his claim. FAC at 6. As discussed above, Plaintiff fails to allege facts that he performed under the contract, i.e., that his advertisement complied with Google's policies. Plaintiff does not allege facts that show Google issued its verbal assurances despite knowing of the contents of Plaintiff's ad or knowing that Plaintiff did not have FDA approval for his product.

The Court therefore DISMISSES Plaintiff's UDPTA claim. Despite the Court's prior Order that Google's alleged breach of contract could not form the basis for Plaintiff's UDPTA claim, Plaintiff's FAC continues to so allege. As such, and in light of Plaintiff's earlier opportunity to amend this claim, the dismissal shall be WITHOUT LEAVE TO AMEND.

**D.     Fraud**

"Under California law, the indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (internal quotation marks omitted).

Rule 9(b) requires parties "alleging fraud or mistake, [to] state with particularity the

circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Claims "grounded in fraud" must "satisfy the heightened pleading requirements of Rule 9(b)." *Vess*, 317 F.3d at 1107. A complaint alleging fraud must "identify the specific misrepresentations [and] specify when and where they occurred." *Id.* "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (allegations of fraud must be stated with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." (internal quotation marks and citations omitted)).

Plaintiff alleges two instances of fraud. The first occurred on April 4, 2017, when Marcus verbally lied to Plaintiff. FAC at 7. Plaintiff "felt the way it was done was deceptive[] and a misrepresentation with an intent to defraud and knowledge of falsity as [he] was not given the service to which we agreed." *Id.*

The second instance involved "the fake phone call data shown to [Plaintiff] in December of 2017." *Id.* Though not entirely clear, Plaintiff appears to allege that on December 8, 2017, Google withdrew $350 from his bank account for four phone calls generated through his advertisement. *Id.* Plaintiff alleges "I asked for a refund as I found no evidence that I received any of these 4 supposed calls, and was never told how much each call costs. I checked my cell phone records for Dec 4, 2017, there was no such inbound calls. Nor do I recall receiving any phone calls." *Id.*; *but see* Dkt. No. 66-4 (document titled "Verified Calls" showing four phone calls on December 4, 2017). Because of this, "the phone call data shown to [Plaintiff] on the Adwords cite was fraudulent, a lie, bamboozle, a scheme, which [Plaintiff] feel[s] is a type of 18 U.S.C. 1343—Elements of Wire Fraud." FAC at 7.

Plaintiff fails to state a claim for fraud. As to the first instance, "[t]he 'mere failure to perform a contract does not constitute fraud,' but 'a promise made without the intention to perform can be actionable fraud.'" *Elements Spirits, Inc. v. Iconic Brands, Inc.*, 2015 WL 5470297, at *3 (C.D. Cal. Sept. 17, 2015) (quoting *Richardson v. Reliance Nat'l Indem. Co.*, 2000 WL 284211, at

10

1  *4 (N.D. Cal. Mar. 9, 2000)).  Plaintiff does not allege any facts that Google entered into the

2  alleged contract with the intent not to perform under it.  As such, there are insufficient allegations

3  to show that the breach of contract was fraudulent.

4  With regard to the second instance, the FAC is devoid of allegations that Google knew the

5  phone calls were fraudulent or intended to defraud Plaintiff.  Nor does Plaintiff allege facts

6  showing he relied on this misrepresentation or was damaged by it.  On the contrary, assuming the

7  $350 charge was for the phone calls, Plaintiff attaches to his FAC a document from his bank

8  showing that he disputed this charge, which the bank credited to his account.  Dkt. No. 66-4 at 11.

9  Accordingly, the Court DISMISSES Plaintiff's fraud claim.  However, as Plaintiff did not

10  previously assert a fraud claim, the Court shall grant him LEAVE TO AMEND to allege facts that

11  describe the fraud with the requisite particularity.

12  **E.   Conspiracy[5]**

13  California's Cartwright Act "generally outlaws any combinations or agreements which

14  restrain trade or competition or which fix or control prices . . . , and declares that, with certain

15  exceptions, 'every trust is unlawful, against public policy and void.'"  *In re Cipro Cases I & II*, 61

16  Cal. 4th 116, 136 (2015) (quoting Cal. Bus. & Prof. Code §16726) (internal quotation marks and

17  and citations omitted).  "To maintain an action for a combination in restraint of trade under the

18  Cartwright Act, the following elements must be established: (1) the formation and operation of the

19  conspiracy; (2) illegal acts done pursuant thereto; and (3) damage proximately caused by such

20  acts."  *Asahi Kasei Pharma Corp. v. CoTherix, Inc.*, 204 Cal. App. 4th 1, 8 (2012) (internal

21  quotation marks and citation omitted).

22  Plaintiff "allege[s] an illegal conspiracy between Google [and] LegitScript and LegitScript

23  and the FDA, to restrain trade."  FAC at 8.  He asserts "Google uses LegitScript technology to

24  scan the words on a website matching them to certain pharmaceutical medical or scientific words"

25  and, as a result, "Google unreasonably and in bad faith refused [him] adwords service."  *Id.*

26  Plaintiff does not offer sufficient facts to support this claim.  As discussed above, Plaintiff

---

[5] Though titled as a conspiracy claim, Plaintiff asserts this claim under the Cartwright Act, California's antitrust statute.  FAC at 8.

fails to allege facts that Google engaged in any misconduct by refusing to run his advertisement, let alone that such refusal was the result of an agreement to restrain trade or competition. That LegitScript works with Google to flag advertisements that do not comply with FDA regulations does not, in and of itself, suggest a conspiracy. The Court therefore DISMISSES Plaintiff's Cartwright Act claim. However, because Plaintiff did not previously allege a Cartwright Act claim in his initial Complaint, the Court grants Plaintiff LEAVE TO AMEND this claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Google's Motion to Dismiss the FAC. The Court DISMISSES Plaintiff's breach of contract, Sherman Act § 1, and UDPTA claims WITHOUT LEAVE TO AMEND. Although the Court previously allowed Plaintiff an opportunity to amend these claims, he failed to allege any new facts in support thereof. Nothing in the record suggests Plaintiff possesses new facts that he was unable to allege in his FAC or initial Complaint.

In light of Plaintiff's pro se status, the Court DISMISSES Plaintiff's Sherman Act § 2, Cartwright Act, and fraud claims WITH LEAVE TO AMEND. *See Harris v. Mangum*, 863 F.3d 1133, 1142 (9th Cir. 2017) ("[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect and . . . opportunities to amend are particularly important for the pro se litigant." (internal quotation marks omitted)). Any amendment shall be limited to these three claims; Plaintiff may not assert any additional claims. The Court will strike any claims asserted for the first time in a second amended complaint.

Plaintiff shall file a second amended complaint no later than June 25, 2018. Plaintiff is warned that failure to file a second amended complaint by this deadline shall result in the dismissal of the Sherman Act § 2, Cartwright Act, and fraud claims without prejudice, and that his action will be dismissed.

**IT IS SO ORDERED.**

Dated: June 4, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge